**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| RAIT PARTNERSHIP, L.P., | : | |
| as the Collateral Manager and Special | : | |
| Servicer for RAIT CRE CDO I, Ltd. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 09-28-GMS/MPT |
| | : | |
| FIELDSTONE LESTER SHEAR & | : | |
| DENBERG, LLP, and | : | |
| MICHAEL DENBERG, ESQ. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| and | : | |
| | : | |
| LAWYERS TITLE INSURANCE | : | |
| CORPORATION, | : | |
| | : | |
| Defendant/ Third Party | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| CHARLES A. BRAY and | : | |
| JOSEPH G. GILLESPIE | : | |
| | : | |
| Third Party Defendants. | : | |

**REPORT and RECOMMENDATION**

**Procedural Background**

The complaint in the present matter was filed on January 12, 2009, by plaintiff,

RAIT Partnership, L.P. ("RAIT"), against Fieldstone Lester Shear & Denberg, LLP

("Fieldstone"), Michael Denberg, Esq. ("Denberg"), and Lawyers Title Insurance

Corporation ("Lawyers Title") (collectively the "defendants") asserting breach of contract

and negligence for failing to file a UCC financial statement (the "UCC Statement") with the Delaware Secretary of State. The complaint also includes a count of negligent misrepresentation against Fieldstone and Denberg.

On March 16, 2009, Fieldstone and Denberg (the "moving defendants") filed a motion in which they assert that the United States District Court for the District of Delaware is not a proper venue and seek dismissal or a transfer to the Southern District of Florida. In the alternative, the moving defendants seek dismissal under Fed. R. Civ. P. 12(b)(6). The moving defendants filed their opening brief in support of this motion on March 16, 2009. On April 23, 2009, RAIT filed its opposition. The moving defendants filed their reply on May 15, 2009.

On April 20, 2009, Lawyers Title filed its answer to RAIT's complaint which included cross-claims against the moving defendants for contribution, indemnification, and contractual indemnification and a third-party complaint against Charles A. Bray and Joseph G. Gillespie for breach of contract, indemnification, and contribution. Both Bray and Gillespie filed answers to the third-party complaint.

On May 11, 2009, the moving defendants filed a motion to dismiss the cross-claims or, in the alternative, transfer to the Southern District of Florida and a motion to dismiss the claim of contractual indemnification against Denberg. Lawyers Title did not file a response to that motion; however, on May 29, 2009, RAIT filed an opposition brief. In response, the moving defendants moved to strike RAIT's brief. Both Lawyers Title and RAIT submitted oppositions to the motion to strike, and on July 6, 2009, the moving defendants filed their reply brief.

Additionally, on May 5, 2009, the defendants and RAIT exchanged initial

2

disclosures at a conference pursuant to Fed. R. Civ. P. 26(f).  On May 29, 2009, the moving defendants filed a motion to stay discovery pending the disposition of their motion to dismiss or transfer the complaint.  On June 3, 2009, Lawyers Title filed a response to the motion to stay discovery.  RAIT filed its opposition to the motion to stay on June 12, 2009, to which the moving defendants replied on June, 29, 2009.

The motions presently under consideration are the moving defendants' motion to dismiss or transfer the complaint, their motion to dismiss or transfer the cross-claims, the motion to strike RAIT's opposition brief thereto, and their motion to stay discovery pending the disposition of the motion to dismiss or transfer the complaint.

**Factual Background**[1]

In 2005, RAIT, a Delaware corporation with its principal place of business in Philadelphia, Pennsylvania, loaned thirty million dollars to the Delaware corporations of Bray & Gillespie Delaware I, L.P. and Bray & Gillespie Delaware III, L.P. (collectively the "borrowers"), for construction on beach front properties in Daytona Beach, Florida.  The borrowers executed a thirty million dollar note in RAIT's favor in exchange for the loan. The loan was insured by Lawyers Title against any liens, such as the mechanic's lien held by Belfor USA Group, Inc (the "Belfor Lien").  In connection with that insurance, Bray and Gillespie, in their individual capacities, executed an indemnity agreement with Lawyers Title.  Bray and Gillespie are residents of Florida.  Bray is the sole general partner of both borrowers.  Gillespie is a member of both borrowers.  Borrowers attached their tangible and intangible personal property as security, but a judgment on

---

[1] All facts referenced herein are found in the complaint and the parties' briefs.

3

the Belfor Lien caused foreclosure on the reality.

Fieldstone, a law firm, is a limited liability partnership under the laws of Florida with its office in Coral Gables, Florida.  Coral Gables is located within the Southern District of Florida.  Denberg was a partner of Fieldstone and is also a resident of Florida. Denberg served as counsel for the borrowers in connection with the loan.  Lawyers Title is a Virginia corporation with its principal place of business in that commonwealth.  The moving defendants acted as agents for Lawyers Title in issuing RAIT a lender's title insurance policy.  Lawyers Title entered into an indemnity agreement with the moving defendants for their service as agents of Lawyers Title.  The moving defendants also served as the escrow and closing agent for the loan.

Before closing the loan, Denberg sent a letter to RAIT advising that its security interest could not be perfected until the UCC Statement was filed with the Delaware Secretary of State.  RAIT responded by sending documents to Denberg and instructed him to file the UCC Statement with the Delaware Secretary of State.  The moving defendants agreed to follow RAIT's instructions.

In June 2007, RAIT underwent a series of assignments and related agreements with its subsidiaries.  During that process, RAIT discovered that the UCC Statement was never filed with the Delaware Secretary of State.  Upon RAIT's request, Fieldstone again agreed to properly file the paperwork.  On November 8, 2007, Fieldstone sent an email to RAIT stating that the UCC Statement was filed the day before.  On September 12, 2008, the borrowers commenced bankruptcy proceedings, while still owing RAIT over thirty million dollars on the loan.

After the bankruptcy proceedings began, RAIT again investigated the status of its

4

security interest.  That inquiry revealed that Fieldstone had unsuccessfully attempted to

file the UCC Statement with the Florida Secured Transaction Registry on November 7,

2007.  The Florida Secured Transaction Registry returned the paperwork to Fieldstone.

Defendants took no further action with regard to the UCC Statement.  At no time did

defendants attempt to file the UCC Statement in Delaware.

**Legal Standard**

Under Fed. R. Civ. P. 12(b)(3), a court may dismiss a case if venue is improper.

In Rule 12(b)(3) motions, the court must generally accept the allegations in the

complaint as true.[2]  The moving party bears the burden of proving that venue is

improper.[3]  While a court may dismiss a case pursuant to Rule 12(b)(3), federal

procedural rules do not contain specific venue provisions or requirements.[4]  Courts must

rely on the relevant venue statutes to determine whether venue is proper.[5]  The statutes

relevant to Rule 12(b)(3) motions are 28 U.S.C. §§ 1391 and 1406(a).  Section 1391

defines venue in general.  Section 1406(a) requires courts to dismiss or transfer cases

where the venue is improper.  Under Section 1406(a), the moving party carries the

burden of demonstrating the appropriateness of a transfer.[6]  The reasoning of 28 U.S.C.

---

[2] *See Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005).

[3] *Chase Bank USA N.A. v. Hess Kennedy Chartered LLC*, 589 F. Supp. 2d 490, 501 (D. Del 2008) (citing *Myers v. American Dental Assn.*, 695 F.2d 716, 724-5 (3d Cir. 1982)).

[4] *Traynor v. Liu*, 495 F. Supp. 2d 444, 449 (D. Del. 2007).

[5] *Id.*

[6] *Marnavi Spa v. Keehan*, C.A. No. 08-389-SLR/LPS, 2009 WL 2386028 at *2 (D. Del. Aug. 3, 2009) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756-57 (3d Cir. 1973); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567 (D. Del. 2001)).

§ 1404(a) is also relevant to Section 1406(a) issues.[7]

Courts must exercise their discretion in deciding whether to dismiss or transfer a case for improper venue to a district where venue would have originally been proper.[8] In the interests of justice, where another district would be a proper venue, a transfer may be the preferred remedy to avoid the "harsh remedy of dismissal."[9] When supplemental claims are brought in an improper venue under 28 U.S.C. § 1367, the preference is to transfer the claims together so that the entire case may be heard and adjudicated under one state's laws.[10]

In *McDonnell Douglas Corp. v. Polin*,[11] the Third Circuit reversed a district court's decision to allow full discovery before the court ruled on a pending motion to transfer.[12]

---

[7] *See United States v. Berkowitz*, 328 F.2d 358, 359 (3d Cir. 1964) (holding the rationale of section 1406(a) applies equally to section 1404(a) because they are "companion sections, remedial in nature, enacted at the same time, and both dealing with the expeditious transfer of an action from one district or division to another").

[8] *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993) ("Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."); *See American Dredging Co. v. Miller*, 510 U.S. 443, 449 (1994) (holding courts have broader discretion under 28 U.S.C. § 1404 to transfer rather than dismiss a case, than courts have under the doctrine of *forum non conveniens*).

[9] *Minnette*, 997 F.2d at 1027 (2d Cir. 1993); *See generally Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) ("Congress, by the enactment of § 1406(a), recognized that the interest of justice may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as time-consuming and justice-defeating technicalities.") (internal quotations omitted).

[10] *See Promotions, Inc. v. Splash Dogs, LLC*, No. 08-977, 2009 WL385611 *27 (N.D. Ohio Feb. 13, 2009) (holding where venue is improper for the principal claims, courts may transfer remaining state claims to a district in which venue would be proper); *See also Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009) (holding where venue is improper for secondary claims, courts may either dismiss or transfer those claims).

[11] 429 F.2d 30 (3d Cir. 1970).

[12] *Id.* at 30.

The Third Circuit held:

> Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.[13]

In so holding, the Third Circuit "sought to bar district courts from making case-management decisions which would later bind the transferee court if indeed the case were transferred."[14]  Accordingly, because both the motion to dismiss or transfer and the motion to stay are presently under consideration, this court should first determine whether the case should be transferred.

**Parties' Positions**

The moving defendants seek a dismissal of the complaint for improper venue or a transfer for improper venue or, in the alternative, a transfer under Section 1404 or a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  The moving defendants maintain that a dismissal for improper venue is appropriate because no substantial events or omissions giving rise to the claims against them occurred within the District of Delaware.  If the District of Delaware is deemed an improper venue, the moving defendants suggest that, in the interests of justice, the case may be transferred instead of dismissed.  The moving defendants assert that the Southern District of Florida would be the proper and logical district to which the case should be transferred.

---

[13] *Id.*

[14] *Gordon v. Diagnostek, Inc.*, 812 F. Supp. 57, 59 (E.D. Pa. 1993).

7

If the District of Delaware is deemed a proper venue, the moving defendants seek a transfer to the Southern District of Florida.  The moving defendants maintain that that district would have originally been a proper venue.  Furthermore, for the convenience of the parties, the moving defendants believe that the Southern District of Florida would be more appropriate than the District of Delaware because the majority of evidence and witnesses are located in Florida and litigating the matter in Delaware would cause substantial inconvenience.  Finally, the moving defendants maintain that judicial economy, compulsory process, and the first-filed rule would best be served by transferring the case to the Southern District of Florida.

In the alternative, the moving defendants move to dismiss the case for failure to state a claim upon which relief may be granted.  They contend that RAIT can prove no set of facts supporting its claims or that the claims are premature and the court must grant an abatement or stay.  The moving defendants maintain that the injury for which RAIT seeks relief has not materialized due to the borrowers' ongoing bankruptcy proceeding.  Because the matter is not yet justiciable, they contend that the matter should be dismissed or stayed pending the conclusion of the bankruptcy proceedings.  Furthermore, the moving defendants argue that the claims for punitive damages and attorney's fees, should be dismissed as inappropriate.

RAIT maintains that the District of Delaware is a proper venue because substantial events or omissions giving rise to its claims occurred within the district.  RAIT contends that by failing to file the UCC Statement with the Delaware Secretary of State, defendants breached a contract, acted negligently, and negligently misrepresented that the paperwork was correctly filed.  RAIT further argues that

8

defendants' actions and non-actions constituted substantial events or omissions within this district.  As such, RAIT asserts that Delaware is a proper venue.

Moreover, RAIT notes that a plaintiff's choice of forum is given deference when determining whether to transfer a case and that the moving defendants cannot justify a transfer if Delaware is a proper venue.  RAIT further contends that its injury is justiciable and claims have been asserted for which relief may be granted.  RAIT submits that the injury to the security interest is the recovery sought and that it does not need to quantitatively measure that injury at the present stage of the litigation.  RAIT points out that when adjudicating motions to dismiss, the allegations in the complaint must be taken as true, and when applying that principle, the complaint at issue adequately frames defendants' conduct as reckless indifference such that punitive damages are cognizable.  Lastly, RAIT stipulates that the attorney's fees sought are for the instant action and not for the services provided in relation to the closing of the loan.

Lawyers Title alleges in its cross-claims that, should it be held liable, the moving defendants owe it contribution or indemnity or contractual indemnity under the agency agreement.  In their motion, the moving defendants maintain that this district is not a proper venue and that the cross-claims should be dismissed or transferred.  Further, the moving defendants contend that, despite the venue issue, the claim of contractual indemnification should be dismissed against Denberg because he was not a party to the disputed contract.

In response to the moving defendants' motion on Lawyers Title's cross-claims, RAIT incorporates its opposition to the moving defendants' motion against RAIT in its answering brief.  Lawyers Title did not respond to the motion to dismiss its cross-claims.

9

Because RAIT, rather than Lawyers Title, opposed their motion on the cross-claims, the moving defendants move to strike RAIT's brief under Rule 12(f), maintaining that the response violated Local Rule 7.1.2(c) as a sur-reply brief filed without first obtaining the court's permission.  Both RAIT and Lawyers Title responded that the motion on the cross-claims concerned proper venue as it pertained to RAIT's complaint.

The moving defendants seek to stay discovery pending disposition of its motion to dismiss or transfer the complaint.  They assert that this court may stay discovery pending a ruling on a dispositive motion, and contend that the motion to dismiss or transfer is a dispositive motion.  Also, the moving defendants maintain that a stay of discovery presents no risk of unfair prejudice to RAIT and best serves judicial economy.

RAIT opposes the motion to stay discovery on the basis that moving defendants did not confer with RAIT in good faith.  Further, RAIT contends that the motion to dismiss or transfer the complaint will not end the litigation and discovery will eventually be required.  Finally, RAIT asserts that a stay of discovery would not aid any party, but a stay would cause RAIT substantial difficulty in gathering evidence.  For these reasons, RAIT avers that a stay of discovery would not be in the interest of justice.  Lawyers Title takes no formal position on the motion to stay discovery.

In light of the interrelationship among the moving defendants' two motions to dismiss, and their motions to strike and to stay discovery, all four motions are addressed herein.

**Analysis**

**Venue**

10

When the defense of improper venue is raised pursuant to Fed. R. Civ. P. 12(b)(3), the court must apply 28 U.S.C. § 1391.  When subject matter jurisdiction is based solely on diversity of citizenship, section 1391(a)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  RAIT invoked that provision in its complaint.

The statutory requirement of "substantial" favors defendants in venue disputes.[15] In *Cottman Transmission Systems, Inc. v. Martino*, the Third Circuit held that "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."[16]  The focus is the location and weight of the events and omissions in connection to the claim, rather than a defendant's "contacts" with a district.[17]  Thus, "[i]n assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute."[18]   A district does not have to be the "best" or only district in which venue is proper.[19]  Further, a district does not have be the locus of the majority of the events or omissions.[20]  To meet the substantiality requirement for proper venue under Section 1391(a), there must exist a "close nexus" between the events or omissions, the district, and the claim.[21]

---

[15] *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

[16] *Id.*

[17] *Id.*

[18] *Id.* at 295.

[19] *Traynor*, 495 F. Supp. 2d at 450.

[20] *Id.*

[21] *Id.* at 451

*Cottman* provides the basis for venue determinations in the Third Circuit.[22]

*Cottman* concerned an action for breach of contract, unfair competition, and a

trademark violation.[23]  The plaintiff, a Pennsylvania corporation, alleged that the

defendants, a Michigan resident and Michigan corporation, failed to remit franchise

payments to Pennsylvania; breached a franchise contract assigned to the plaintiff that

was executed and performed in Michigan; operated a business in Michigan which

violated a non-competition clause; continued displaying trademark materials in

Michigan; and failed to return those materials to Pennsylvania.[24]  The plaintiff asserted

that the Eastern District of Pennsylvania was a proper venue because substantial

events or omissions giving rise to the claims occurred in that district.[25]  Specifically, the

plaintiff alleged that the defendants' failure to pay the licensing fees and to return the

advertisements and the plaintiff's preparation of the phonebook advertisements for the

defendants were substantial events occurring within the Eastern District of

Pennsylvania.[26]

The Third Circuit held that no substantial events or omissions giving rise to the

dispute occurred within the Eastern District of Pennsylvania.[27]  The court noted that the

contract was executed, performed, and breached in Michigan.[28]  Further, it rejected the

plaintiff's argument that the omissions–the failure to return materials and the failure to

---

[22] *See Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 462 (3d Cir. 1996) (citing *Cottman* when discussing 28 U.S.C. § 1406(a) transfers).
[23] *Cottman*, 36 F.3d at 292.
[24] *Id.* at 295.
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Cottman*, 36 F.3d at 295.

remit payments–occurred in Pennsylvania.[29]  Instead, the court held that the omissions
occurred where the non-action happened and not where the action was supposed to
occur.[30]  The court noted that the preparation of the phonebook advertisements was the
"sole event in the Eastern District of Pennsylvania of possible relevance to this case,"
but that the connection was "questionable" because that conduct was not relevant to the
disputed contract.[31]

Omissions occur where the non-action happens, not where the act should have
occurred.[32]  The nature of the instant dispute revolves around the non-filing of the UCC
Statement with the Delaware Secretary of State.  RAIT alleges that the failure to file and
the misrepresentations made by the moving defendants caused the injury for which
RAIT now seeks a remedy.  To determine whether the District of Delaware is a proper
venue, it is necessary to discern whether the alleged events or omissions in connection
with the three claims, taken in a light most favorable to RAIT as the non-moving party,
have a "close nexus" with this district or are "tangential."

The claims for breach of contract and negligence stem from the same facts.  A
claim for breach of contract arises from the actions or non-actions that violate the
contractual obligation.  Similarly, the claim for negligence arises where the duty is
violated.  RAIT alleges that defendants owed it the duty to file the UCC Statement with
the Delaware Secretary of State.  There can be no claim for breach of contract or

---

[29] *Id.*

[30] *Id.* ("Even though the result was [the plaintiff's] non-receipt of those items in
Pennsylvania, the omissions bringing about the result actually occurred in Michigan.").

[31] *Id.*

[32] *See Id.*

negligence without a breach of that duty.  Therefore, the location of the substantial events or omissions giving rise to the claims herein occurred where the obligation to file the UCC Statement was breached.  The breach was by omission.  As a result, the purported breach of contract and negligence arose in the district where the omission occurred.

The Third Circuit provided two examples of acts by omission in *Cottman*–the failure to remit franchising fees and the failure to return trademark materials.[33]  The plaintiff in *Cottman* sought to establish that those omissions occurred where the end event should have occurred.[34]  Here, RAIT claims that the non-filing of the UCC Statement occurred in Delaware.  Under the *Cottman* rationale, RAIT's argument is incorrect.  In *Cottman*, the duties breached required the defendants to act within the contested venue; however, the breach occurred because the defendants did not act in the contested venue.[35]  The Third Circuit determined that the omissions occurred where the defendants were when they failed to act.[36]

In the instant matter, RAIT contends that defendants had a duty to file the UCC Statement, which would have required defendants to act within Delaware.  RAIT further avers that defendants breached that duty by *not acting* in Delaware.  Therefore, the purported duty to file the UCC Statement was breached where defendants were located when they failed to file the UCC Statement.[37]  Defendants were in southern Florida and

---

[33] *Cottman*, 36 F.3d at 295.

[34] *See id.*

[35] *Id.*

[36] *See Id.*

[37] In its opposition brief, RAIT asserts that filing statements in Delaware has consistently been held as acts occurring within Delaware by relying on *Solae, LLC v.*

14

Virginia when the non-action occurred.  Therefore, their violations did not occur in Delaware:  rather, they happened in Florida and Virginia.  As a result, the substantial events or omissions giving rise to the breach of contract and negligence claims did not occur within the District of Delaware.

The claim of negligent misrepresentation is only brought against the moving defendants.  Negligent misrepresentation arises when a representation made is false, of which the actor knew or should have known, and upon which the plaintiff reasonably and detrimentally relied.  According to the complaint, the moving defendants represented to RAIT by email that the UCC Statement had been filed with the Delaware Secretary of State.  That representation was inaccurate, of which the moving defendants purportedly should have been aware because of their own non-action.  For the purpose of this motion, RAIT reasonably and detrimentally rely upon the representation.  The record only indicates that the email was sent from the moving defendants' office in southern Florida and received at RAIT's principal place of business in Pennsylvania.  No allegations are made which indicate RAIT relied on the representation outside of Pennsylvania.  The sole substantial event or omission alleged to have occurred in Delaware is the moving defendants' omission to file the UCC Statement.  Based on the analysis herein, the court finds that that omission did not

_____

*Hershey Canada Inc.*, 557 F. Supp. 2d 452 (D. Del 2008), *Sample v. Morgan*, 935 A.2d 1046 (Del. Ch. 2007), and *Healthtrio Inc. v. Margules*, No. 06C-04-196, 2007 WL 544156 (Del. Super. Jan. 16, 2007).  Those cases hold that filing paperwork within the State of Delaware qualifies as an act under Delaware's long-arm statute.  While filing paperwork in Delaware may satisfy the requirements for personal jurisdiction, the cases do not address whether the failure to file documents in this jurisdiction constitute "substantial events or omissions" as required under 28 U.S.C. § 1391(a)(2).

occur in Delaware.  Therefore, no substantial events or omissions occurred in this district which give rise to the negligent misrepresentation claim.

The only connections between the District of Delaware and the claims asserted are tangential and not substantial.[38]  Since no substantial events or omissions giving rise to RAIT's action occurred within the District of Delaware, it is not a proper venue under 28 U.S.C. § 1391(a).

**Transfer of Venue**

Having determined that this case may not be properly adjudicated in this district, the court must either dismiss or transfer the matter to another district where it may have been properly brought.[39]  In the interest of justice, courts generally prefer transfers over dismissals under the principle of the federal procedural rules that cases should generally be tried on their merits, rather than suffer dismissal from procedural flaws.[40]  Based on 28 U.S.C. § 1406, the court finds that the instant matter should be transferred, requiring an analysis of which districts the action may have originally been brought.

The Southern District of Florida is a district in which each claim asserted by RAIT may properly be heard.   Fieldstone, Denberg, and Lawyers Title were all located in that judicial district when the UCC Statement was not filed.  Although Lawyers Title is located in Virginia, it acted through Fieldstone and Denberg and, therefore, its omission

---

[38] Although RAIT is incorporated under the laws of the State of Delaware, all of its interactions with defendants were conducted outside of Delaware.  RAIT asserts that Denberg and Fieldstone acted as counsel to Delaware borrowers for a loan from a Delaware lender and Lawyers Title issued a lender's title insurance policy to a Delaware lender.   However, each of those instances involved conduct and non-actions which occurred either in Florida or Virginia.

[39] *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962*); see* 28 U.S.C. § 1406.

[40] *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993).

occurred in Florida.  Thus, if a breach of a contractual duty exists, that breach occurred in Florida.  Further, if defendants owed RAIT a duty to file the UCC Statement and tortuously breached that obligation, then that breach also occurred in Florida.  Lastly, the claim of fraudulent misrepresentation arose from conduct occurring in both the Southern District of Florida and the Eastern District of Pennsylvania:  the misrepresentation was made in Florida, and was relied upon in Pennsylvania.  Since the Southern District of Florida is a proper venue for all of RAIT's claims, the matter should be transferred to that district.

**Cross-Claim and Third-Party Complaint**

As found herein, this district is an improper venue and the matter should be transferred to the Southern District of Florida.  If the principal claims are transferred, then the supplemental claims brought by Lawyers Title should not be retained in this court.[41]  Therefore, the supplemental claims should be transferred as well, allowing the Southern District of Florida to exercise its discretion as to what claims and motions will be entertained.[42]

**Motion to Strike**

For the reasons stated herein, because the matter should be transferred, the moving defendants' motion to strike RAIT's opposition brief is moot.

---

[41] *See* 28 U.S.C. § 1367.

[42] *See Promotions, Inc. v. Splash Dogs, LLC*, No. 08-977, 2009 WL385611 *27 (N.D. Ohio Feb. 13, 2009) (holding when venue is improper for the principal claims, courts may transfer the remaining state claims to a district where venue would be proper); *See also Sierra Club v. Johnson*, 623 F. Supp. 2d 31, 37 (D.D.C. 2009) (holding where venue is improper for secondary claims, courts may either dismiss or transfer those claims).

17

**Motion to Stay Discovery**

As a result of the findings herein, the motion to stay is moot for the following reasons.  First, the motion is moot because the motion to dismiss or transfer is no longer pending disposition.  Second, under *McDonnell Douglas Corp. v.Polin*,[43] the "court which ultimately decides the merits of the action should also decide various questions which arise during the pendency of the suit . . . ."  Therefore, the moving defendants' motion to stay discovery should be denied as moot.

**ORDER AND RECOMMENDED DISPOSITION**

For the reasons contained herein, I recommend that:

(1) Defendants Fieldstone and Denberg's motion to transfer for improper venue (D.I. 8) be GRANTED.

(2) Defendants Fieldstone and Denberg's motion to transfer the cross-claims for improper venue (D.I.25) be GRANTED.

(3) Defendants Fieldstone and Denberg's motion to strike Plaintiff's brief (D.I. 54) be DENIED, as moot.

(4) Defendants Fieldstone and Denberg's motion to stay discovery (D.I. 42) be DENIED, as moot.

(5) Any remaining issues raised in the moving defendants' motions to dismiss are DENIED as moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific

---

[43] 429 F.2d 30 (3d Cir. 1970).

written objections within ten (10) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated April 7, 2008, a copy of which is available on the Court's website, www.ded.uscourts.gov.

October 14, 2009                              /s/ Mary Pat Thynge_____
                                             UNITED STATES MAGISTRATE JUDGE